Argued 9 October, decided 21 November, 1906.

**WILMOT *v.* OREGON RAILROAD CO.**

87 Pac. 528; 7 L. R. A. (N. S.) 202.

RAILROADS—LIABILITY FOR STOCK KILLED IN STATION GROUNDS—FENCES.

1. Section 5139, B. & C. Comp., making railroad companies liable for the value of stock killed by moving trains on or near its unfenced track, does not apply to station or yard grounds, within the limits of which fences are not required.

IDEM—QUESTION FOR COURT OR JURY.

2. Where it appears clearly that animals entered upon station grounds and were killed by moving cars, it is the duty of the judge to take the case from the jury as a question of law; but where, as in this case, the evidence is conflicting as to whether the point of entry is within the station grounds, the question should be submitted to the jury.

RAILROADS—EXTENT OF STATION GROUNES.*

3. The depot or station grounds of a railroad company is the place where passengers get on or off the train, and where freight is loaded and unloaded, including all grounds reasonably necessary or convenient to that purpose, together with the necessary tracks, switches and turnouts thereon, or adjacent thereto, necessary for handling and making up trains, storage of cars, etc., and so much of the main track outside the switches as is necessary for the proper handling of trains at the station.

EFFECT OF DESIGNATING STATION GROUNDS.

4. Where grounds have been appropriated and set apart by a railroad company for station or depot purposes, such appropriation affords strong evidence that the boundaries so fixed are such as and no more than are necessary and proper.

RAILROADS—KILLING STOCK ON TRACK—CONTRIBUTORY NEGLIGENCE AS A QUESTION FOR THE JURY.

5. In an action against a railroad company for killing plaintiff's stock, the question whether plaintiff was guilty of contributory negligence in turning the stock out to graze on unenclosed lands near the depot, was for the jury.

From Multnomah:   JOHN B. CLELAND, Judge.

Action by Frank Wilmot and others against the Oregon Railroad & Navigation Co. The facts appear in the opinion. Defendant had a judgment, and plaintiffs appeal.    REVERSED.

For appellants there was a brief over the names of *George William Pyle Joseph* and *Thomas M. Dill*, with an oral argument by Mr. Joseph.

For respondent there was a brief over the names of *W. W. Cotton* and *Arthur Champlin Spencer*, with an oral argument by *Mr. Spencer*.

MR. CHIEF JUSTICE BEAN delivered the opinion.

This is an action to recover the value of four horses killed by the moving trains of the defendant on an unfenced portion of its track, but which the plaintiffs claim and allege should have been fenced.

The complaint states a cause of action for common-law negligence, and also under the statute making a railway company

NOTE.—See 7 L. R. A. (N. S.) 202-216, for note on What Are Depot Grounds Within the Meaning of Fence Laws. ·    REPORTER.

liable for stock killed on an unfenced track. The court below, in accordance with the doctrine approved in *Harvey* v. *Southern Pac. Co.* 46 Or. 505 (80 Pac. 1061), required plaintiffs to elect upon which cause of action they would proceed, and they elected to rely upon the statutory liability. The defense is that the animals entered upon the track at the depot grounds of the defendant, and that plaintiffs were guilty of such contributory negligence in suffering and permitting them to run at large at the place where they were killed as will bar a recovery. The defendant owns and operates a railroad from Portland to the eastern boundary of the state. Bridal Veil is a station between Portland and The Dalles, used principally for the shipment of lumber. It consists of station grounds, a depot building, side tracks, switches and turnouts necessary and proper for the handling of the business at that point. A switch or side track used by it in the transaction of its business leaves the main track at a point 200 or 300 feet east of the depot building, and, passing south of such building, intersects the main track again about 1,800 feet west thereof. Along this side track are situated the planing mill, lumber yards, sheds and other buildings of the lumber company. In 1902, the defendant constructed on the north side of the main track a passing track 3,000 feet long which commence about 700 or 800 feet west of the depot building and opposite the lumber platform of the lumber company and extends about 2,200 feet east of the depot. About 100 feet east of this passing track the defendant constructed a cattle guard with fences connected therewith on either side. From this point east the track is fenced, but it is not inclosed between the cattle guard and the west end of the depot grounds. The plaintiffs live and are in business at Bridal Veil. On the evening of April 11, 1904, they turned their horses out to graze on the uninclosed lands south of the depot as they had been accustomed to do for some time. During the night the horses strayed onto the track of the defendant, and were killed by its moving trains. The evidence tended to show that the horses entered upon the track west of the east end of the passing track, but were run down and killed east of the cattle guard. The court below directed a nonsuit on

the ground that the place of entry was within the depot grounds of the defendant and at a place it was not required to fence.

1. The statute makes a railroad company liable for the value of stock killed by its moving trains, engines or cars, upon or near an unfenced track (B. & C. Comp. § 5139), and is broad enough to include animals killed at the depot grounds. It has, however, been held that the statute did not extend to depot grounds because the purposes for which they are used and the right of public convenience are inconsistent with the obligation to fence at that point: *Moses* v. *Southern Pacific Co.* 18 Or. 385 (23 Pac. 498, 8 L. R. A. 135) ; *Sullivan* v. *Oregon Ry. & Nav. Co.* 19 Or. 319 (24 Pac. 408).

2. The question for decision upon the trial, therefore, was whether the place where the animals of the plaintiffs entered upon the track of the defendant was within or without the depot grounds. If within the depot grounds, the plaintiffs cannot recover in this action; but if not, defendant is liable under the statute unless the plaintiffs were guilty of contributory negligence. The parties differ radically as to whether the question thus presented is one of law or of fact. The plaintiffs claim that it was a question of fact, and should have been submitted to the jury, while the defendant insists that it was a matter of law for the court. The rule is, we take it, that whether a railway company shall fence its track at its depot grounds is a question of law, and, if the testimony shows that animals entering upon such grounds are injured or killed by moving trains, the owner cannot recover under the statute, and the liability of the company is for the court: *Moses* v. *Southern Pac. Co.* 18 Or. 385 (23 Pac. 498, 8 L. R. A. 135) ; *Eaton* v. *Oregon Ry. & Nav. Co.* 19 Or. 371, 391 (24 Pac. 413) ; *Eaton* v. *McNeill,* 31 Or. 128 (49 Pac. 875) ; *Harvey* v. *Southern Pac. Co.* 46 Or. 505 (80 Pac. 1061). But it is often a disputed question as to whether a certain point constitutes a part of the depot grounds, and if the evidence is conflicting or different inferences may be drawn from it, the question is for the jury, and not the court. Mr. Elliott says: "While it is purely a question of law whether or not a railway company shall fence

(48th Or.—32)

at its depot grounds or at points where the erection of a fence would interfere with the company in transacting its business, it is a question of fact whether a certain point constitutes part of the depot grounds or whether the erection of a fence at any particular place would interfere with the company's employees in the performance if their duties." 3 Elliott, Railroads, § 1202.

In *Grosse* v. *Chicago & N. W. R. Co.* 91 Wis. 482 (65 N. W. 185), the unfenced portion of the right of way was half a mile in length and extended north beyond a switch which was 1,400 feet from the depot building. At a highway crossing a short distance south of the switch it was customary to load and unload freight. Between such crossing and the switch, plaintiff's colts came upon the right of way and were killed, and it was held that it was a question for the jury whether the place of entry was a part of the depot grounds. In *Rhines* v. *Chicago & N. W. R. Co.* 75 Iowa, 597 (39 N. W. 912), it was held that whether that part of the company's ground which was not the ordinary place of receiving or delivering freight but where freight of a single shipper was handled, should be left unfenced, was a question of fact for the jury. And, in *Dinwoodie* v. *Chicago, M. & St. P. Ry. Co.* 70 Wis. 160 (35 N. W. 296), it was likewise held to be a question of fact whether the defendant's right of way at a point 60 rods from the station building where there was a side track in addition to the main track was necessary and convenient and actually used for loading and unloading freight so as to make it a part of the depot grounds, thus relieving the company from the duty of fencing it. And in *Bean* v. *St. Louis, I. M. & S. Ry. Co.* 20 Mo. App. 641, it was ruled that where a cow was killed adjacent to a railroad station and at a place used by the railroad for switching purposes in connection with its station grounds, the court could not declare as a matter of law that the company was not bound to fence its track at that point. See, also, *Indiana Ry. Co.* v. *Hale,* 93 Ind. 79; *Chicago & E. I. Ry. Co.* v. *Modesitt,* 124 Ind. 212 (24 N. E. 986); *McDonough* v. *Milwaukee & N. Ry. Co.* 73 Wis. 223 (40 N. W. 806).

3. The depot or station grounds of a railway company is the place where passengers get on and off the trains and where

freight is loaded and unloaded, and includes all grounds reasonably necesary or convenient to that purpose, together with the necessary tracks, switches, and turnouts thereon or adjacent thereto for handling and making up trains. storage of cars, and the like, and so much of the main track outside the switches as is requisite for the proper handling of trains at the stattion: 3 Words & Phrases, 2005 *et seq.;* 9 Am. & Eng. Enc. Law (2 ed.), 367; *Grosse* v. *Chicago & N. W. Ry.* 91 Wis. 482 (65 N. W. 185); *Grondin* v. *Duluth So. S. & Atl. Ry. Co.* 100 Mich. 598 (59 N. W. 229).

4. And where grounds have been appropriated, surveyed and set apart by the railway company for station or depot purposes, it affords very strong, if not conclusive, evidence that their boundaries and extent are such as and no more than are necessary and proper; and their limits should not be curtailed or extended by the court or jury unless in a very clear case: 3 Elliott, Railroads, § 1194; *Chicago & G. T. Ry. Co.* v. *Campbell,* 47 Mich. 265 (11 N. W. 152); *McGrath* v. *Detroit, M. & M. Ry. Co.* 57 Mich. 555 (24 N. W. 854); *Rabidon* v. *Chicago & West. M. Ry. Co.* 115 Mich. 390 (73 N. W. 386, 39 L. R. A. 405).

Now, there was no evidence in this case that the place where the plaintiffs' horses entered upon defendant's track was within the limits of the station grounds as set aside and designated by the defendant, or within such grounds as hereinbefore defined, and therefore the court could not declare as a matter of law that defendant was not required to fence its track at such point. The north track constructed by the defendant in 1902, so far as the evidence shows, was intended to be used for the passing of trains, and was in no way connected with or necessary to the use of the depot grounds; nor indeed, that it was on such grounds. We think, therefore, that the question whether the point where the horses entered was within the depot grounds was a question for the jury, and should have been submitted to them.

5. A claim is made that plaintiffs were guilty of contributory negligence in turning their horses out to graze upon the unin-

closed lands near the depot, but whether this was such contributory negligence under the circumstances as will defeat a recovery was for the jury: *Moses* v. *Southern Pac. Co.* 18 Or. 385 (23 Pac. 498, 8 L. R. A. 135) ; 2 Thompson, Negligence, § 2004.

Judgment reversed and new trial ordered.　　　REVERSED.